Our second case for argument today is Roberts against Alexandria Transportation. Ms. Vanderland. Yes, good morning. Thank you, Your Honor, and may it please the court. The issue in this appeal is whether the district court erred in interpreting the Illinois Contribution Act when it limited the term uncollectible in reference to a tort piece's obligations as used in Section 3 of the Act to employers with liability. Ms. Vanderland. Yes. Before we get there, I have a jurisdictional question in this case as well. Okay. I must say I haven't a clue what the district court's judgment might mean. The document called judgment says that safety must pay, quote, a 10% contribution, and it doesn't elaborate. I have no idea what that means. How much is that, and who gets it? Sure. Well, 10% would be one. The total settlement fund was $1.9 million, so 10% of that would be $190,000. Well, you're assuming that you know what it's 10% of, but the district court never said. Well, respectfully, Your Honor, there was an amended judgment because we had asked that the court enter a monetary judgment based on the 10%, and there was an amended judgment entered, and it was under seal at the time, and it's referenced in our brief. Do you think we might see it? The rules require the judgment to be attached to the brief, not hidden away in a drawer. Certainly that was not our intent, Your Honor. I guess I believe that it would be seen by Your Honors based on the docket and what would have been sent to you guys by the district court. Would you furnish, make sure that you furnish a copy of the judgment, which contains a dollar amount, and who gets it? Yes, absolutely, Your Honor. Ms. VanderLane, this is Judge St. Eve. Does the amended judgment include a specific dollar amount? It does. Okay. Ms. VanderLane, this is Judge Brennan. Does that $190,000 that I assume the amended judgment makes reference to, is that in escrow? Is there a promise to pay? What is the answer to that question? The amended judgment is judgment in favor of, you know, in favor of the Alex parties in the amount of $190,000. I'm trying to pull it up here real quick so I can look at it specifically. So it's not in escrow, but I know that in that regard, obviously, there was a motion to allow the, I think, the insurance policies or things of that nature to waive any type of bond or anything, if that's what you're referring to. So basically, the Alex parties here paid the plaintiffs $1.85 million, and after that payment, continued with its contribution claim against safety. And the $1.9 million common liability fund comes about because Edwards Komoduski, who was also a third-party defendant, had settled with the plaintiffs for $50,000 prior to the settlement between the Alex parties and the plaintiffs. So that's how you get to a common fund of $1.9 million. And basically, our argument before the district court was that the liability determined as against Edwards Komoduski, as determined by the jury, which was 75%, had to be reallocated between the Alex parties and safety based on the unambiguous language of the Illinois Contribution Act, specifically Section 3. In that regard, that act says that no person shall be required to contribute to one seeking contribution an amount greater than its pro rata share unless the obligation of one or more of the joint tort feasors is uncollectible. In that event, the remaining tort feasors shall share the unpaid portions of the uncollectible obligation in accordance with their pro rata liability. And in this case, Your Honors, under the Contribution Act, when the other third-party defendant, Edwards Komoduski, settled with the plaintiffs, the district court granted a good faith finding. And by virtue of Section 2 of the Illinois Contribution Act, when that good faith finding was granted, that statutorily precluded anybody from seeking contribution against Edwards Komoduski. So our contribution complaint against them, the third-party complaint, was dismissed, and statutorily, nobody could seek contribution against them. And in fact, safety admits this in their response, that when we decided to continue with our contribution claim, we would know that not a single dollar could ever be recovered against Edwards Komoduski. That is true, because that is the statutory effect. Yes, Your Honor. Excuse me. Counsel, the judge is trying to ask a question. Excuse me. I know it's hard on the phone here. Did you object to the good faith finding of the EK settlement? We did. You did? We did. Should it matter at all to the determination that you were aware when you settled with the plaintiffs here, you were aware of the good faith determination with respect to the EK settlement, and you knew they wouldn't have to pay any more given that good faith finding? I believe it should not matter, Your Honor. And the reason why is this. It's the whole point of the Contribution Act and the public policy behind it is to encourage settlement. So we want people to settle cases, but we don't want to disincent them to settle cases because for some reason there might be an uncollectible third-party defendant. So that shouldn't matter at all. In addition, when we settled with them, we very well knew that the Contribution Act under Section 100.3 provided that when there is an uncollectible tortfeasor, that that tortfeasor's liability has to be reallocated to the remaining tortfeasors. So the fact that we knew that shouldn't make a difference at all, and it certainly shouldn't be any situation where a defendant is disincented to settle with the plaintiffs because of a settling defendant that later is going to be put on the verdict form in relation to a Contribution Act. Ms. Vanderland, a question on that disincentive issue. It strikes me it's not the statute that's disincentivizing it. The circumstance that resulted here was a very low settlement by one of the parties and a very high settlement with regard to another. And then individuals go to trial. The allocation with regard to percentage of liability is made by the jury on the verdict form. If things had been different with regard to that allocation, would you still be making the same argument you're making now? If the jury had reallocated, had allocated liability differently between safety, the Alex party and EK? Correct. Let's say the 75% and the 10% were flipped. Would you be making the same argument for the interpretation of the statute? We would be making the same argument to the extent that EK's liability has to be redistributed. I mean, that's specifically provided by the Contribution Act. So that same argument would be made regardless of what the percentages would be. So, I mean, the bottom line here is, and I think it's important to remember, that Edwards-Kamoguski was never sued by the plaintiffs. The only defendants sued by the plaintiffs that are for purposes of this appeal are the Alex parties. So Edwards-Kamoguski settled with the plaintiff even though Edwards-Kamoguski was never sued by the plaintiff. So the fact that the plaintiff accepted $50,000 from Edwards-Kamoguski had no effect on the plaintiff whatsoever because the plaintiff didn't have a lawsuit against Edwards-Kamoguski. So we objected to that settlement and that good faith finding on our position that that didn't represent their pro rata share of liability. But the court granted a good faith finding, as is often the case, and by virtue of that dismissed the claim. Our claim, we are the only ones who had a claim against Edwards-Kamoguski, dismissed the claim against Edwards-Kamoguski. But the Illinois Contribution Act says that we can still pursue our contribution claim and that now that Edwards-Kamoguski became uncollectible by virtue of its settlement, even if it's put on the verdict form, its liability is redistributed between the other tort users because it's uncollectible. And I think a very important point here, and again, we have cases directly on point that address this issue. Counsel, you have five minutes left and might want to save some of it to respond to the cross appeal. I had reserved five minutes and rebut. Oh, I see what you're saying. Okay, gotcha. As far as the cross appeal is concerned, obviously the court is well aware of the standards, but under all of the facts and the evidence that was submitted to the jury, it is clear that safety had duties in this case as it related to safety. Mr. Sicking, who was the president of Safety International. Ms. Vanderland, under Illinois law, if Mr. Sicking had been an employee of EK, would he have been personally liable? Certainly he would be personally liable. Even though he had absolutely nothing to do with this accident, he would be personally liable? He would be personally liable if one of his duties as an employee was to perform safety issues. And do you have any state cases for that proposition? Because I looked and couldn't find any. I guess the comparison I would make, for example, if he was driving a vehicle. No, please, would you address my question? I asked if you had any state cases for the proposition that Sicking, or say the head of safety at any firm, would be personally liable for an accident. I cannot cite you to a case, but I know under Illinois law that employees... As far as I can find, there are no such cases. And that's what sets up my question, why it should be different if Sicking is engaged as an independent contractor rather than as an employee. Your Honor, Sicking as an independent contractor entered into a contract and by virtue of the obligations under that contract... Counsel, you're not getting my question. If it turns out that under Illinois law, an employee, make him the head of safety operations at the general contractor, would not be personally liable for a flag man's error. Why would it make a difference that that same person was engaged as an independent contractor? You can't say, well, the difference is the independent contractor is in charge of safety, because my question assumes that the employee is the head of safety. The safety contractor would be vicariously liable for the negligence of its employees. Why? So whatever... Counsel, I'll try this last time. I'm not trying to skirt the issue. Maybe I'm not understanding it, Your Honor. I think that's true. I think that's true. Okay. So go ahead. Yeah, I mean, safety is sued in this case, and obviously any negligent acts on the part of its employees, it is vicariously liable for. It can only act through its employees. Obviously, it can't act on its own. And so in this case, all of the negligent failures... So under Illinois law, could you collect damages personally from the president of EK? You could not collect damages personally from the president of EK, but EK would be vicariously liable for his negligence. I mean, as the president himself. Yeah. I mean, and maybe I'm confusing this. You know, I can only tell you I've handled numerous cases where the employee is sued and the employer is sued. And there's a judgment against the employee and against the employer. But the employer obviously is vicariously liable, and in those situations... Yeah, look, counsel, the employee who is vicariously liable here is the flag man. No. Are there Illinois... No, safety had its own obligations. It's very hard with this telephone hookup. But are there any Illinois cases for the proposition that if there is, say, a truck owned by Company X is speeding, whether you can sue directly the head of the company's safety operations and say, well, that person should have made sure there was no speeding? Any state cases for that proposition? I do not believe so. I don't think so either. However, there are cases that say the company who agreed to provide for the safety of the site can be sued for negligence. Well, time is now out. But the kind of question I'm asking is if you can't sue the head of safety operations personally because a driver exceeded the speed limit, why would it make any difference under Illinois law that instead of there being a head of safety operations as an employee, there is a head of safety operations as an independent contractor? Why would that make a legal difference? My point would be for the same reasons that a safety contractor on a... to provide safety, even though they subcontracted it to a safety subcontractor. And that safety subcontractor then can also be sued for the failure to provide safety, even if it wasn't... Thank you, Ms. Vanderland. Thank you. Mr. Copeland. Good morning, Your Honors. May it please the Court. My name is Brandon Copeland. I'm here today on behalf of the Appellee and Cross-Appellant Safety International, LLC. I'll start out by responding to the appeal made by the Alex parties, and I'll just refer to them as the Alex parties throughout so we all know. Alex spends a lot of their time in their brief discussing facts that really don't have anything to do with the issue in this case as far as their appeal is concerned. The facts that matter with regard to whether or not Edwards-Kamidulski was an uncollectible party are fairly simple. Edwards-Kamidulski was a third-party defendant in this case, just like Safety International was a third-party defendant in this case. Edwards-Kamidulski, some might say, had the good sense to settle out with the plaintiffs directly. Edwards-Kamidulski wasn't any sort of a... They weren't under any sort of statutory or legal cap. They didn't have a defined percentage by which they could only be held liable when they were negotiating their settlement. Their liability was wide open. The only thing that would limit Edwards-Kamidulski's liability in this case if it had gone to a jury trial would be the verdict of the jury. Now, the jury in this case returned a verdict that found Safety International to be 10% at fault and Alex to be 15% at fault, and the rest of it on Edwards-Kamidulski, 75% at fault. The case law that Alex relies on here, Your Honors, is simply not analogous to this situation. It's not on point. And as far as I can tell, and I think that the Alex parties would agree with me on this, there's really no good case law that addresses this point right now. Mr. Copeland, our research came across a case called Antonincelli v. Rodriguez, 104 Northeast 3rd, 1211 at page 1217. It's an Illinois Supreme Court opinion from last year. It provides that the Contribution Act provides a remedy for a joint tortfeasor to seek contribution against fellow joint tortfeasors who have not paid their pro rata share of the common liability. Wouldn't that type of a statement from the Illinois Supreme Court either be heavily persuasive or dispositive? Your Honor, I apologize. I'm not familiar with that case, but based on the statement that you just gave to me there, I think that it could at least, without knowing the facts of it, be instructive. The pro rata share under the law, Judge, is defined by the Treziski case that we cited to mean the amount of fault assessed by the jury. So if that is the way that they can get their share of an under-contributing party, then I suppose that that statement would be fairly helpful. Let me ask you the same question I asked Ms. Vanderland. Is the $190,000, is that an escrow or is that purely just a figure in an amended judgment or has there been some promise to pay? What I'm thinking of is oftentimes if a party in safety's position is going to make a payment regardless, whether it be $190,000 or $741,000, depending on this court's decision, that they would go ahead and make that payment. But that's not been done here, is that correct? Your Honor, what we did was we filed a motion to let the Liability Policy of Safety International act as a bond on that judgment. And I don't believe there was any objection to that. And so I wouldn't say that it's an escrow, but there's a note for it. It's probably the best way to look at it. Thank you. Does that answer your question? It does. Thank you. So what Alex is attempting to do here, Your Honors, by framing Edwards Kamenowski as a, and I'm doing finger quotes but you can't see that over the phone, as an uncollectible party, is they're trying to raise the percentage of fault that the jury found against Safety International, 10%, to 39%. A huge increase, an increase in terms of dollars that amounts to about $550,000. Now, they suggest that Edwards Kamenowski is uncollectible because they settled out of the case. I would suggest that a different label could be applied to Edwards Kamenowski in this case. And it's not uncollectible, but they were collected. They paid what they were going to pay in this case. And so I don't, so the label of uncollectible, to me, Your Honors, that does not stick on Edwards Kamenowski. The district court, I believe, was correct when they found as much. Edwards Kamenowski is not an uncollectible party for purposes of the Illinois Contribution Act. Mr. Copeland, this is Judge St. Eve. The Illinois Contribution Act talks, the exception, the unless language, refers to unless the obligation of one or more of the joint tort feasors is uncollectible. Not if the party is uncollectible, but the obligation. Why wouldn't the obligation here be the percentage of fault on a pro rata share redistributed as the statute provides? Thank you, Your Honor. That's a good question. I believe that the obligation of the party here being, the party being Edwards Kamenowski, was the amount that they agreed to pay the plaintiff directly. And they paid that amount. There's no question. It's part of the pleadings, as Vanderling mentioned it herself. Why wouldn't the obligation be the percentage of fault determined by the jury as opposed to the agreed settlement amount? Well, the obligation, Your Honor, could be, it would be wide open until there was some sort of either, I guess, judgment or settlement entered into here. In my mind, the obligation is the amount that they agreed to pay Edwards Kamenowski when they agreed to pay it in exchange for a release directly with the plaintiffs. And as your question points out, that is an exception here to the general rule in the Contribution Act. And the general rule being no party should be forced to pay its own amount in excess of its pro rata share. And that's exactly what Alex is attempting to do here to Safety International. They're attempting to force them to pay more than their pro rata share. Now, they would say, well, they've been forced to pay more than their pro rata share. But as the judge's question points out earlier, they were not forced to pay more than their pro rata share. They bargained for that share that they paid, and they bargained for the amount. Why should we define pro rata share as settlement amount as opposed to what the jury determined each respective tort feasor's pro rata share was? Well, by this time, your honor, when the settlement was entered into and approved with the good faith finding for Edwards Kamenowski, that became their obligation, I believe, under the statute. And so whether they had an obligation to pay more or less than what the jury ultimately determined to be their percentage of fault, they could still bargain for that. But the good faith settlement, the Section 2D of the Joint Tort Feasor Contribution Act, doesn't talk in terms of obligations or pro rata share. It talks in terms of liability. Does that matter? I think it does because, your honor, if we sort of played things out with Edwards Kamenowski, if they were at the trial and they had been found 75% at fault, their liability was assessed at 75% by the jury, with that verdict, they could still pay less than 75%. In fact, it happens often. In order to forego an appeal, let's say they would agree to pay maybe 50% of a number as opposed to the 75 the jury found. The liability fixes on them an obligation to pay something. What the party that is entitled to the payment ultimately accepts is up to the party. Does that answer the question, Judge? Sort of. Sort of. Thank you. So moving on to the case that they rely on primarily, the Alex parties, the Illinois Tool Works case, your honor. The Illinois Tool Works case is completely distinguishable for one major fact. The party that was found to be uncollectible in that instance was subject to a Kotecki cap for workers' compensation. There were three parties in this contribution act, and as the court knows, one of the parties was the employer of the plaintiff. That party was capped at 10% of liability. However, at a bench trial, the employer was found to be 35% at fault. So the remaining 25%, subject to a statutory cap that could never be imposed on the employer, regardless of whether it agreed to some other amount, the plaintiff wasn't satisfied with the amount, whatever, was going to be that 10%. They were, in that essence, uncollectible. And that was a matter of first impression. If you read into the case, your honors, you'll see that it was a matter of first impression, and it relied heavily on Minnesota law. And it focused almost exclusively on the cap that the employer was subject to when talking about how that was an uncollectible party. The Minnesota law that it used and found so instructive also cites to another case, the Greger case, in which it was found that a settling tortfeasor, in other words, a party that settles out of the case, was not an uncollectible party. Much like we've argued, that party was someone that had just negotiated and came to a settlement, and they were collected on it. They weren't uncollectible by means of any sort of a statutory cap or some sort of statutory immunity. Now, our client, Safety International, is more like that party in the Greger case from Minnesota that's cited in Illinois Tool Works. And I think that would be the proper line of reasoning to follow. We also cited to the Truszewski case, which I've mentioned previously, and this is another contribution claim case with three parties. This case came up a lot when we were arguing about who should be on the verdict form at trial in this case. The district court ultimately sided with us and decided to put Edward Kamidulski on that verdict form. The reasoning why the Truszewski case found that all of the parties should be on the verdict form I think is instructive to our issue here. And that was because you could not assess total liability without all of the liable parties involved or at least having some sort of jury determination about who was responsible and to what degree. What Alex is attempting to do is essentially what the parties in Truszewski were told they couldn't do. They're attempting to eliminate Edward Kamidulski from the verdict form here. But they're not eliminating their liability, obviously, because it has to equal 100 percent. But they're trying to eliminate Edward Kamidulski and just redistribute their fault among the remaining parties. And the statute, as you pointed out in your question, Your Honor, is in a few parts. And the exception to the statute is this wording about being an uncollectible party. That's the exception to the statute. The purpose of the statute, the presumption of the statute, is that no party should have to pay more than its pro rata share. And here for Safety International, that share is 10 percent. We also cite the Ponto in our brief. I believe that case supports our proposition even further that an uncollected party is more than someone that is just a party you can't get money from. That is not what is meant by… Mr. Copeland, you have two minutes remaining. Oh, thank you, Judge. I lost track of my timer. I'd like to move to my cross appeal. In my cross appeal, Your Honor, I believe it presents a very simple question. And I think I can cover it in two minutes. In a couple of parts, first of all, we don't believe that there could be a contribution claim based on the breach of a contract. Now, the question may be, why didn't you raise that on a motion to dismiss? Well, the answer to that is because this really wasn't what they pled coming into the case. The Alex parties originally pled that we failed to supervise our own employees. In other words, we failed to supervise Safety International employees. By the time the case was submitted to the jury, they had shifted their theory of liability to say that we had failed to supervise Edwards-Kamidolsky employees. That is strictly basing their contribution claim on a breach of contract between Edwards-Kamidolsky and Safety International. And I believe under the Jackson National Life Insurance Company case, that is not a good basis for a contribution claim. Beyond that, there's no duty here, Judge. It's undisputed. Now, at the trial court level, Judge Gilbert found that there was a question of fact about the terms of the contract. Well, by the time we had three days of testimony, much of it from Mr. Edwards of Edwards-Kamidolsky and my client, Mr. Sicking of Safety International, there was no dispute about what this contract called for. Alex relies on a duty that they say Safety had to train flaggers and to supervise flaggers. And in the testimony that we cited, it's in the appendix of our cross-appeal, Your Honors. It cannot be clearer. Mr. Edwards says, no, that is not why I hired Safety International. Mr. Sicking says, no, that's not why I was hired. So you have the only two parties to the oral contract agreeing on the terms of it. Those terms are ambiguous in respect to those two items, and they should have been treated by the district court as a matter of law to find that there was no duty here. In other words, Alex is relying on a breach of a duty that simply does not exist. Thank you, Mr. Copeland. The case is taken under advisement.